UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. |
| | § | |
| $54,385.00 in U.S. Currency, | § | |
| Defendant. | § | |

### **VERIFIED COMPLAINT FOR FORFEITURE IN REM**

The United States of America files this action for forfeiture and alleges upon information and belief:

*Nature of the Action*

1. This is an action to forfeit property to the United States pursuant to 21 U.S.C. § 881(a)(6).

*Defendant Property*

2. The Defendant is $54,385.00 in United States currency (the "Defendant Property").

3. On or about February 5, 2019, law enforcement officers seized the Defendant Property from Javardo Malishan in Houston, Texas. The Defendant Property is currently in a bank account in the custody of the United States Marshals Service.

4. On or about April 6, 2019, Javardo Malishan submitted a claim to the U.S. Drug Enforcement Administration (hereinafter "DEA") contesting administrative forfeiture of the Defendant Property.

*Jurisdiction and Venue*

5.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

6.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355(b)(1), 1391(b), and 1395.

*Statutory Basis for Forfeiture*

7.  The Defendant Property is subject to forfeiture under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of all moneys furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act (21 U.S.C. § 801, et. seq.), all proceeds traceable to such an exchange, and all money used or intended to be used to facilitate any violation of the Controlled Substances Act.

*Facts*

8.  On or about February 5, 2019, Javardo Malishan (hereinafter "Malishan") took a commercial flight from Pensacola, Florida to George Bush Intercontinental Airport, Houston, Texas for a connecting flight to Orange County, California.  After the aircraft arrived in Houston, Malishan got off the airplane.  According to Officer A. Ordaz (hereinafter "Ordaz") of the Houston Police Department (hereinafter "HPD"), Malishan exited the jetway carrying a blue backpack and entered the main concourse of the airport. He began looking from side to side as if he was attempting to detect law enforcement surveillance.

9. Ordaz and Officer C. Smith (hereinafter "Smith") approached Malishan as he walked down the concourse. Ordaz identified himself to Malishan as an HPD officer, showing him his police credentials and badge, and asked if he could speak with him. Malishan stopped, looked at Ordaz's credentials and badge, and agreed to talk to the officers. Ordaz noticed that Malishan's breathing became heavier and the artery on his neck visibly began to pulsate. It appeared that Malishan was about to faint so Ordaz comforted him by saying that everything was fine and that he and his partner just wanted to ask a few questions.

10. When asked where he was traveling, Malishan said he was coming from Pensacola, Florida and headed to Orange Country, California. When asked if he lived in either of those two cities, Malishan said he resides in Pensacola. When asked for a plane ticket, Malishan took out several United Airlines boarding passes from his pocket and handed one of them to Ordaz. The boarding pass reflected travel from Houston to Orange County, California. Malishan also provided officers his Florida driver's license which bore his name and likeness.

11. The officers asked Malishan why he was traveling to California. Malishan informed them that he was going there on business. He claimed he was in the trucking business. In addition to the backpack he was carrying, Malishan informed the officers that he checked another piece of luggage. Ordaz advised Malishan the he and his partner were narcotics officer who approached passengers to determine whether they were transporting drugs. When asked if he had packed the luggage himself, Malishan said he had. Ordaz then asked Malishan if he was transporting narcotics or large sums of money in his luggage.

Malishan said he was not transporting narcotics but admitted he was carrying a large amount of money, about "fifty." When asked to clarify what he meant, Malishan said he had $50,000.00 in his possession. He said that the cash was in his checked bag. Malishan gave officers consent to check both bags. He accompanied officers to the airport HPD officers for further investigation but refused to answer any further questions.

12. Smith searched Malishan's backpack but found nothing. Canine Officer, R. Corrales (hereinafter "Corrales"), recovered Malishan's check bag and searched it. Corrales found several rubber-banded bundles of U.S. Currency concealed in articles of clothing in Malishan's checked suitcase.

13. The checked suitcase was taken to HPD's office where Smith removed several bundles of U.S. currency in assorted dominations. The cash was concealed in several pairs of socks in inside pants pockets. Officers also recovered a large rubber-banded bundle of U.S. currency from Malishan's wallet. Defendant property was in the following denominations: 239 - $100 bills; 101 - $50 bills; 1,269 - $20 bills; 4 - $10 bills; 3- $5 bills; for a total of $54,385.00.

14. Corrales's drug detection dog "Gero" alerted to the odor of narcotics on the currency.

15. Malishan has an extensive criminal history. He has been arrested several times for offenses including unlawful possession of synthetic cannabinoids, possession of cocaine, possession of marijuana and resisting arrest. He served a sentence of confinement of one year and six months for unlawfully carrying a concealed firearm.

16. The Defendant Property was furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act, 21 U.S.C. § 801, et. seq., is proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of the Controlled Substances Act, 21 U.S.C. § 801, et seq.

## NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED that if you assert an interest in Defendant Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirement set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. A verified claim must be filed no later than thirty-five (35) days from the date this Complaint has been sent.

An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas at United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002, and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

### *Requested Relief*

Wherefore, the United States of America requests that judgment of forfeiture be entered against the $54,385.00 in favor of the United States of America under 21 U.S.C. §

881(a)(6) in addition to such costs and other relief to which the United States of America may be entitled.

        Respectfully submitted,

        RYAN K. PATRICK
        United States Attorney

By:   s/ Abe Martinez
      Abe Martinez
      Assistant United States Attorney
      United States Attorney's Office
      Southern District of Texas
      1000 Louisiana, Suite 2300
      Houston, TX 77002
      (713) 567-9000
      abe.martinez@usdoj.gov

## Verification

I, Lawrence Lilly, a Special Agent employed by the U.S. Drug Enforcement Administration, declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in the Complaint are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation, and they are true and correct to the best of my knowledge and belief.

Executed on this the __3rd__ day of July, 2019.

*Lawrence Lilly*
Lawrence Lilly
Special Agent
U.S. Drug Enforcement Administration